UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| THACKERY S. GRAY, and YELENA F. GRAY, on behalf of themselves and all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 18 C 00419 |
| TD AMERITRADE, INC., and SHEAFF BROCK INVESTMENT ADVISORS, LLC, | ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

**CHARLES P. KOCORAS, District Judge:**

Before the Court is Defendant TD Ameritrade, Inc. ("TD Ameritrade") and Sheaff Brock Investment Advisors, LLC's ("Sheaff Brock") (collectively, "Defendants") motion to dismiss Plaintiffs Thackery and Yelena Gray's ("Plaintiffs") Class Action Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the Court grants Defendants' motion.

## BACKGROUND

For purposes of this motion, the Court accepts as true the following facts from the amended complaint. *Murphy v. Walker*, 51 F.3d 714, 717 (7th Cir. 1995). All reasonable inferences are drawn in Plaintiffs' favor. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

Plaintiffs are citizens of Illinois. Defendant TD Ameritrade is a New York corporation with its principal place of business in Nebraska. Defendant Sheaff Brock is an Indiana LLC whose members consist of Indiana citizens David Sheaff Gilreath and Ronald Robert Brock.

Plaintiffs and the putative classes they represent are decades-long customers of TD Ameritrade, which provided them with an online trading platform for investment. TD Ameritrade also operates the "AdvisorDirect" program through which it introduces its customers to Registered Investment Advisors ("RIAs"). To participate in the AdvisorDirect program, customers must have a minimum of $500,000 in investable assets.

Plaintiffs participated in the AdvisorDirect program, and TD Ameritrade Investment Consultant Roman Kobrin ("Kobrin") recommended Sheaff Brock to be Plaintiffs' investment advisor. TD Ameritrade provided Plaintiffs with investment brochures and marketing materials for Sheaff Brock's services.

In January 2014, TD Ameritrade set up a meeting between Plaintiffs and Sheaff Brock, which was attended by Plaintiffs, Kobrin, and Sheaff Brock representative Jody Alexander. During this meeting, Sheaff Brock pitched its investment advisory services to Plaintiffs. Kobrin also engaged in the meeting, endorsing Sheaff Brock's trading strategy and answering Plaintiffs' questions.[1]

---

[1] Plaintiffs note that TD Ameritrade representatives received a commission for each client that signed up in the AdvisorDirect program with Sheaff Brock.

At the meeting, Defendants recommended Sheaff Brock's "put options income" trading strategy. According to Plaintiffs, Kobrin made the following representations about the strategy:

   a. Plaintiffs could expect a 4-6% return on investment over and above all fees;
   b. Plaintiffs could get out of the strategy and program at any time;
   c. The "put options income" strategy works in both up and down markets; and
   d. There may be some down months, but in the end the "put options income" strategy will make an annual profit.

Comp. ¶ 37. Additionally, Sheaff Brock made the following representations about the conservative nature of the put options income strategy through its employees and marketing materials:

   a. The strategy was "money in their pockets";
   b. The strategy was a "cash flow generator" and "It is popular because apparently quite a few folks think getting an extra 6% on top of their big stock position or bonds is attractive";
   c. "All we try to do with this strategy is hit bunts over, and over, and over";
   d. "As sure as a clock ticks, and time premium erodes, the profits will eventually become realized";
   e. The strategy was "a cash flow sausage factory…but the net result, Mmm savory";
   f. In the past month the strategy had "created over $1 million in realized put premium for our clients…out of thin air, kind of mind blowing"; and
   g. "Best year we have ever had, by a long shot.…Many of our customers made enough money in their accounts last year to buy a yacht."

Comp. ¶ 56, 62, 67, 68. Plaintiffs allege that "in the meetings and phone calls…between [the parties involved], the risks and complexities of the strategy were not properly discussed or disclosed."

Based on the information provided, Plaintiffs entered into a Client Options Account Agreement ("Options Agreement")[2] with Sheaff Brock and TD Ameritrade. Plaintiffs maintain that in the Options Agreement, Defendants agreed to be "bound by the rules of the Options Clearing Corporation, the Financial Industry Regulatory Authority ('FINRA'), and any other self-regulatory organizations that apply to options transactions." Plaintiffs also maintain that Sheaff Brock certified its compliance with all applicable laws, rules, and regulations.

Among the applicable rules are those set forth by FINRA, which among other things prohibit options communications that contain false or misleading statements; omissions of material facts; promises of specific results; exaggerated or unwarranted claims; or that fail to reflect the risks attendant to options transactions. The FINRA rules also provide that a Registered Options Principal—which Plaintiffs allege to be TD Ameritrade—must supervise discretionary accounts. Plaintiffs allege that Defendants violated the FINRA rules by casting the put options income strategy as conservative, when it was actually an "aggressive and speculative strategy" that "augmented risks, as it sought to make money through speculative bets about the future price of the

---

[2] All parties agreed that enforcement of the Options Agreement would be governed by Nebraska law.

underlying asset." "Due to the significant exposure the seller faces and the volatility of the investment," Plaintiffs allege that the put options income strategy resulted in "staggering losses" to themselves and the putative classes.

To recover their losses, Plaintiffs, on behalf of themselves and the putative classes, filed the instant complaint on January 19, 2018, asserting state-law claims for breach of contract, breach of fiduciary duty, money had and received, and a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq*. On March 15, 2018, Defendants filed a joint motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

## **LEGAL STANDARD**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) "tests the sufficiency of the complaint, not the merits of the case." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012). The allegations in the complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Plaintiffs need not provide detailed factual allegations, but must provide enough factual support to raise their right to relief above a speculative level. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A claim must be facially plausible, meaning that the pleadings must "allow…the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The claim must be described "in sufficient detail to give the defendant 'fair notice of what the…claim is and the grounds upon which it

rests.'" *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to withstand a 12(b)(6) motion to dismiss. *Iqbal*, 556 U.S. at 678.

## **DISCUSSION**

Defendants urge the Court to dismiss Plaintiffs' complaint because the allegations are barred by the Securities Litigation and Uniform Standards Act ("SLUSA"), 15 U.S.C. § 78bb(f).[3] This statute prohibits state-law class-action claims relating to misrepresentations, omissions, or manipulative or deceptive devices in connection with the purchase or sale of covered securities. 15 U.S.C. § 78bb(f)(1). Congress initially enacted the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §§ 77z-1 and 78u-4, to curb abuses in class action litigation involving nationally traded securities. *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, 547 U.S. 71, 81 (2006). However, PSLRA had the unintended consequence of displacing federal securities fraud class action litigation to state courts under the guise of common law actions, such as breach of contract. *Id.* "To stem this shift from Federal to State courts and prevent certain State private securities class action lawsuits alleging

---

[3] Defendants also plead alternative grounds for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) in the event that the Court did not accept their SLUSA preclusion argument. However, given that the Court finds dismissal based on SLUSA to be warranted, the Court need not address those arguments. Accordingly, Defendants individual motions to dismiss are denied as moot.

6

fraud from being used to frustrate the objectives of [PSLRA], Congress enacted SLUSA." *Id.* at 82.

Consistent with this purpose, "when analyzing SLUSA preclusion, courts are guided by the substance rather than the form of a claim." *Bourrienne v. Calamos*, 2011 WL 3421559, at *4 (N.D. Ill. 2011); *See also Holtz v. JPMorgan Chase Bank*, 846 F.3d 928, 930 (7th Cir. 2017) ("…[N]ondisclosure is a linchpin of this suit no matter how [Plaintiff] chose to frame the pleadings."); *Rabin v. JPMorgan Chase Bank*, 2007 WL 2295795, at *6 (N.D. Ill. 2007) ("Rather than focus on the labels that Plaintiffs assigned to the claims, the Court analyzes the substance of the allegations…"); *Denton v. H&R Block Financial Advisors, Inc.*, 2001 WL 1183292, at *3 (N.D. Ill. 2001) ("…[T]he focus is on the substance of the claim and not the plaintiff's characterization of it."); *Feitelberg v. Merrill Lynch & Co., Inc.*, 234 F.Supp.2d 1043, 1051 (N.D. Cal. 2002) ("…[I]f it looks like a securities fraud claim, sounds like a securities fraud claim and acts like a securities fraud claim, it is a securities fraud claim, no matter how you dress it up."). Accordingly, the Court is not bound by the exact terminology used in the complaint, but rather the underlying essence of the allegations.

To successfully claim SLUSA preclusion, Defendants must show that Plaintiffs' claim is: (1) a covered class action; (2) based on state law; (3) that alleges a misrepresentation or omission of a material fact, or the use of any manipulative or deceptive decide or contrivance; (4) in connection with the purchase or sale of; (5) a covered security. 15 U.S.C. § 78bb(f)(1); *Bourrienne*, 2011 WL 3421559, at *3.

Plaintiffs concede that the first three elements are met. Therefore, the Court will only consider the disputed fourth and fifth elements.

**I. Misrepresentations Were Made "In Connection With" a Purchase or Sale**

Plaintiffs dispute the fourth element of SLUSA preclusion, namely whether the misrepresentations at issue were made "in connection with" a purchase or sale of a covered security. Plaintiffs claim that the misrepresentations were not made in connection with a purchase or sale, but rather in connection with the decision to hire Sheaff Brock as their investment advisor. Moreover, Plaintiffs emphasize that because they gave Defendants complete discretion over investment decisions, Plaintiffs were not in the position to make a decision "in connection with" a purchase or sale. *Citing O'Brien v. Cont'l Ill. Nat. Bank and Trust Co. of Chi.*, 593 F.2d 54, 63 (7th Cir. 1979) ("When the trustee or agent alone makes the investment decision to purchase or sell, his failure to disclose information about the purchase or sale to the beneficiary or agent does not satisfy the 'in connection with' requirement of § 10(b)."). However, this principle is no longer good law post-*Dabit* and *Holtz*. *Rabin*, 2007 WL 2295795, at *7 n.4 ("Plaintiffs' reliance on two pre-*Dabit* cases—*O'Brien* and *Norris v. Wirth*—is misplaced. The Court believes that *SEC v. Sandford* (a case cited in *Dabit* with approval) belies Plaintiffs' contention that, in the context of SLUSA, the plaintiff must have possessed investment authority [to satisfy] the 'in connection with' language….").

The Supreme Court and courts in this Circuit have affirmed that a plaintiff need not personally make the investment decision to satisfy the "in connection with"

requirement; rather, the fraud has to coincide with the covered securities transaction. *Dabit*, 547 U.S. at 85 ("One might have concluded that an alleged fraud is 'in connection with' a purchase or sale of securities only when the plaintiff himself was defrauded into purchasing or selling particular securities. …But this Court…has rejected that view. Under our precedents, it is enough that the fraud alleged 'coincide' with a securities transaction—whether by the plaintiff or by someone else."); *Holtz*, 846 F.3d at 934 ("[*Zanford*] holds that the 'in connection with' requirement is satisfied when a broker makes a purchase or sale as an investor's agent. That's equally true of transactions that the Bank made as [Plaintiff's] agent."; *Goldberg v. Bank of Am.*, 845 F.3d 913, 916 (7th Cir. 2017) ("[Plaintiff's] complaint alleged a material omission in connection with sweeps to mutual funds that are covered securities; no more is needed."); *Rabin*, 2007 WL 2295795 at *7 ("Despite the fact that they did not purchase, sell, or hold the shares, Plaintiffs have alleged fraud that occurred 'in connection with the purchase or sale' of the Fund.").

This interpretation of the "in connection with" requirement is consistent with courts across the country. *See Gray v. Seaboard Sec., Inc.*, 126 Fed.Appx. 14, 17 (2d Cir. 2005) ("[T]he alleged breach of contract in this case consisted precisely of the provision of investment advice that purported to be something it was not; just as in *Dabit*, the breach caused damages through transactions in securities. The claim therefore alleges a misrepresentation in connection with the purchase or sale of a security.") (internal quotation marks and citations omitted); *Hill v. HSBC Bank*, 207

9

F.Supp.3d 333, 342 (S.D.N.Y. 2016) ("That Plaintiffs had no control over which particular investment strategy Madoff undertook or specific securities he purchased does not obviate the fact that Plaintiffs were 'seeking, directly or indirectly, to purchase covered securities,' which the Second Circuit has squarely held satisfies the 'in connection with'…requirement under SLUSA."); *Antczak v. TD Ameritrade Clearing, Inc.*, 2018 WL 2298494, at *7 (E.D. Pa. 2018) (finding that misrepresentations were "in connection with" purchase or sale of securities despite plaintiff giving complete trading discretion to her investment advisor); *Banks v. Northern Trust Corp.*, 2017 WL 3579550, at *3 (C.D. Cal. 2017) ("[N]umerous federal courts have considered and rejected the argument advanced by Plaintiffs, confirming that investments, even if made by a plaintiff's agent, meet SLUSA's 'in connection with' requirement.").

Given the weight of the authority rejecting Plaintiffs' argument, the Court cannot find that Plaintiffs decision to give investment discretion to Sheaff Brock bars their misrepresentations from being "in connection with" the purchase or sale of a covered security. Instead, as the Supreme Court instructs, the fraud has to "coincide" with the securities transaction. *Dabit*, 547 U.S. at 85. Defendants' alleged misrepresentations about the conservative nature of the put options income strategy and the expected returns certainly coincide with a securities transaction because such a transaction is the foundation for their claim. Indeed, these misrepresentations were the catalyst for Plaintiffs to hire Sheaff Brock to engage in securities transactions on their behalf. Any

other conclusion would put too fine a point on the "in connection with" requirement. Accordingly, the Court finds that the fourth element of SLUSA preclusion is satisfied.

## II. Misrepresentations Involved a "Covered Security"

Plaintiffs next dispute whether the alleged misrepresentations involved the purchase or sale of a "covered security." SLUSA incorporates the definition of "covered security" from Section 18 of the Securities Act of 1933. 15 U.S.C. § 78bb(f)(5)(E). This definition includes securities that are nationally traded and listed on a national exchange. *Dabit*, 547 U.S. at 83; *Knopcik v. UBS Fin. Serv., Inc.*, 121 F.Supp.3d 444, 457 (E.D. Pa. 2015).

Plaintiffs maintain that the complaint does not accuse Defendants of making any misrepresentations about the underlying stocks or options that caused Plaintiffs' losses, but rather about the Defendants' services and put options income strategy. Plaintiffs argue that Defendants' services and strategy cannot be considered a "covered security," so SLUSA cannot preclude their claims. However, that is far too narrow a reading of the statute. According to the Supreme Court, "a narrow reading of the statute would undercut the effectiveness of [PSLRA] and thus run contrary to SLUSA's stated purpose…." *Dabit*, 547 U.S. at 86. Therefore, considering the practical implications of Plaintiffs' argument, the Court finds that any misrepresentation regarding the success or failure of a particular securities trading strategy necessarily involves the underlying securities. Given that the underlying securities are subject to "the rules of the Options Clearing Corporation," Comp. ¶ 3, traded on national exchanges, and regulated by the

Securities and Exchange Commission, they are "covered securities" for purposes of SLUSA preclusion. Consequently, all five preclusion elements are satisfied, and SLUSA bars Plaintiffs' state-law class-action claims.

### III. Implications of SLUSA Bar

Because SLUSA preclusion applies, the Court must dismiss Plaintiffs' state-law class-action claims, which make up the entirety of the complaint. Plaintiffs maintain that the Court's dismissal should be without prejudice. However, Seventh Circuit precedent dictates otherwise. *Brown v. Calamos*, 664 F.3d 123, 128 (7th Cir. 2011) (criticizing "cases that allow dismissal of a case barred by SLUSA without prejudice"). In *Brown*, the Seventh Circuit cautioned district courts that they should have "no further business with the case" once they decide SLUSA is a "bar to the suit." *Id.* Consistent with this precedent, the Court dismisses the complaint with prejudice.

However, the dismissal does not mean that Plaintiffs are left with no recourse. SLUSA does not prevent Plaintiffs from bringing claims against Defendants to recover for their losses, "[i]t simply denies plaintiffs the right to use the class-action device to vindicate certain claims." *Dabit*, 547 U.S. at 87. If Plaintiffs want to pursue their state law claims, they have "to proceed in the usual way: one litigant against another." *Holtz*, 846 F.3d at 934. Further, the parties agreed to arbitrate their individual disputes, so Plaintiffs should direct their claims to the proper forum.

## **CONCLUSION**

For the aforementioned reasons, the Court grants Defendants' motion. It is so ordered.

Dated: 05/13/2019

*Charles P. Kocoras*

Charles P. Kocoras
United States District Judge